UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SMOOTH VAPE, LLC, | § | |
| Plaintiff, | § | |
| | § | |
| | § | Civil Case No. 23-3000 |
| v. | § | |
| | § | |
| LANCASTER COUNTY, | § | |
| PENNSYLVANIA; HEATHER L. | § | |
| ADAMS, in her official capacity as | § | COMPLAINT |
| Lancaster County District Attorney | § | |
| and in her personal capacity; | § | |
| JEFFREY R. KRAUSE, in his | § | |
| official capacity as a law | § | |
| enforcement officer for Lancaster | § | |
| County and in his personal capacity; | § | |
| JOHN DOES 1-3, in their official | § | |
| capacities as law enforcement | § | |
| officers with Lancaster County and | § | |
| in their personal capacities, | § | |
| Defendants. | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

Plaintiff SMOOTH VAPE LLC complains as follows:

**Preliminary Statement**

1.     This is a civil action for damages and declaratory relief arising under the Fourth Amendment to the Constitution of the United States. This suit concerns the warrantless search and seizure of certain hemp-derived products carried by Plaintiff Smooth Vape, which products are and have been legally sold *for years* in Lancaster County and all over Pennsylvania—by Smooth Vape and many others— pursuant to Pennsylvania law and the policies of the Pennsylvania Department of Agriculture.

2.      The products at issue in this case—derived from hemp and containing various tetrahydrocannabinol isomers known in abbreviated form as "delta-8," "delta-10," and so forth—have been openly and legally sold in Pennsylvania for years, following certain amendments to Pennsylvania and Federal law described further below.

3.      Despite this, Lancaster County District Attorney Adams directed warrantless raids of Smooth Vape and dozens of other businesses in Lancaster County in April 2023 to seize such products, claiming they are schedule I controlled substances under Pennsylvania law.  To Plaintiff's knowledge, Adams is the only District Attorney in the state to take such a position, which flies in the face of the Pennsylvania statutes and the Pennsylvania Department of Agriculture's policies and public statements on the matter, as described below.  The products at issue are legal to possess and sell in Pennsylvania, and Defendants therefore lacked any basis for the seizure of such products.

4.      Further, even if the products at issue were still controlled substances, the Defendants' warrantless search and seizure as undertaken here violated Smooth Vape's rights under the Fourth Amendment.

5.      Smooth Vape has not only suffered the loss of tens of thousands of dollars' worth of inventory from the seizure, which is now likely destroyed, but Smooth Vape has suffered and will continue to suffer lost profits and damage to business goodwill unless and until this Court provides relief that protects Smooth Vape from such illegal enforcement by Lancaster County.

## Jurisdiction and Venue

6.     This civil action arises under the Fourth and Fourteenth Amendments of the United States Constitution and 42 U.S.C. § 1983.  As such, this Court has federal question jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 and 1343. Plaintiff also seeks a declaration of rights pursuant to the Declaratory Judgments Act, 28 U.S.C. §§ 2201-02.

7.     Venue is proper in this Court under 28 U.S.C. § 1391(b) because Defendants are located in this district, and the Defendants' official duties are performed in this district.  Additionally, a substantial part of the events giving rise to this claim occurred in this district.

## Parties

8.     Plaintiff Smooth Vape LLC (Smooth Vape) is a business entity registered under the laws of Pennsylvania.  Smooth Vape was established in 2015 in Cliona, Pennsylvania, by owner John Dolan.  Dolan, then a heavy cigarette smoker, was able to quit smoking cigarettes entirely within a month of beginning vaping. Given his success in quitting cigarettes, he decided to leave his job in information technology and established the business, primarily selling vaping products. Beginning with a single store and one employee in Cliona in 2015, Smooth Vape now operates four retail locations in Central Pennsylvania, with approximately 25 full- and part-time employees.

9.     Defendant Heather Adams is District Attorney of Lancaster County, Pennsylvania.  At all times relevant to this Complaint, Adams was acting under color

of state law.  Adams is a policymaker for Lancaster County for purposes of County liability under 42 U.S.C. § 1983.

10.     Defendant Lancaster County is a subdivision of the Commonwealth of Pennsylvania.  The County and its officials are responsible for creating, adopting, and enforcing the rules, regulations, ordinances, laws, policies, practices, procedures, and/or customs for the County.

11.     Defendant Jeffrey R. Krause is a lieutenant with the Lancaster County Drug Task Force (LCDTF), acting under color of law.

12.     Defendant John Doe No. 1 is an officer with the Lancaster County Drug Task Force, acting under color of law.

13.     Defendant John Doe No. 2 is an officer with the Lancaster County Drug Task Force, acting under color of law.

14.     Defendant John Doe No. 3 is an officer with the Lancaster County Drug Task Force, acting under color of law.

## Statement of Facts

**Smooth Vape's establishment and long history of selling hemp-derived products openly to the public in Pennsylvania**

15.     Plaintiff Smooth Vape was established in 2015 by owner John Dolan, beginning with a single storefront, in Cleona, Lebanon County, selling primarily vapor products, such as electronic devices for delivery of vaporized nicotine and bottles of the "e-liquid" used with such devices.  The company's success has allowed it to expand from this single location to now four storefronts: the original store in

Complaint                                         4

Cleona; one in Harrisburg (Dauphin County); and two in Lancaster County (Manheim and Willow Street).

16.    Smooth Vape now employs approximately 25 persons.  The majority are part-time, and about seven or eight are employed full-time.

17.    The products at issue in this case, however, are not Smooth Vape's electronic nicotine products, but certain products containing various chemical compounds derived from hemp; namely, products containing delta-8 tetrahydrocannabinol ("delta-8 THC"), delta-9 THC, delta-10 THC, and delta-11 THC.  These substances are some of the over 100 cannabinoids produced naturally by the cannabis plant, generally in very small quantities, that can now legally be synthesized from industrial hemp and included in various products, as discussed further below.

18.    The market for such hemp-derived "delta" products emerged following relevant amendments to both Pennsylvania and federal law.  2016 Pa. Legis. Serv. Act 2016-92 (H.B. 967), P.L. 822, 3 Pa. C.S.A. § 701 *et seq.* (amending Pennsylvania's Agriculture Code with a chapter concerning industrial hemp research); 2018 Agriculture Improvement Act, Pub. L. No. 115-334, 132 Stat. 4490, 21 U.S.C. §§ 802(16)(B), 812 sched. I(c)(17) (removing hemp and hemp-derived products from the federal schedule of controlled substances).

19.    Delta-9 THC is the main psychoactive ingredient in marijuana.  To distinguish marijuana from other, legal, hemp-derived products—all of which derive from the same plant (Cannabis sativa L.), the statutory definitions are pegged to the

concentration of delta-9 THC.  7 U.S.C. § 1639o(1) ("The term 'hemp' means the plant Cannabis sativa L. and any part of that plant, including the seeds thereof and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis."); 3 Pa. C.S.A. § 702 (defining "Industrial hemp" as "[t]he plant Cannabis sativa L. and any part of the plant, whether growing or not, with a delta-9 tetrahydrocannabinol concentration of not more than 0.3% on a dry-weight basis.").

20.     Thus, for years Smooth Vape has carried several different hemp-derived products containing delta-8 THC, delta-10 THC, delta-11 THC, and delta-9 THC (with a concentration of not more than 0.3% of delta-9 THC), in all its stores across all three counties.

21.     All such products carried by Smooth Vape are derived from hemp and contain less than 0.3% delta-9 THC.

22.     All the hemp-derived products that Smooth Vape carries are sourced from reputable manufacturers who provide testing documentation reflecting that the products at issue contain no more than 0.3% delta-9 THC..

23.     These products have been sold for years from Smooth Vape's shelves, just as all of Smooth Vape's other products, in stores open to the public.  These products are extremely popular and generate monthly revenues in the tens of thousands of dollars from each storefront location.

24.     Smooth Vape's customers who buy these hemp-derived products run the gamut in age, from 18 years of age to elderly individuals, with many customers around 50-60 years old who find the products useful for various ailments and pain relief.  One regular customer at the Willow Street store was a Vietnam veteran in his late 80s or early 90s who purchased certain hemp-derived products.  Another regular customer was a young adult man who had survived cancer and bought a certain hemp-derived product that he used successfully along with his regular regime of medications to relieve his symptoms.  The products these two customers purchased regularly were among those illegally seized by Defendants, as described further below.

25.     Smooth Vape owner John Dolan knows, from his personal participation in this industry, that such products have been—and continue to be—legally sold in stores all over Lancaster County and all over Pennsylvania.

26.     In fact, after someone stole delta-8 THC products from Smooth Vape's Harrisburg store in 2021, Dolan reported the theft to the Harrisburg Police Department without incident or any suggestion that the stolen products were illegal.

**Lancaster County DA Adams orchestrates a sudden, warrantless raid and seizure from Smooth Vape's Willow Street store in April 2023**

27.     On April 18, 2023, Defendant Jeffrey Krause and three as-yet-unidentified officers, apparently with the Lancaster County Drug Task Force (LCDTF), entered Smooth Vape's store at 2600 Willow Street Pike, Willow Street, Pennsylvania.  Krause and the other three officers were armed and in full uniform,

including bulletproof vests bearing the LCDTF initials, and one or more of the officers carried a firearm.

28.    The officers entered the store during regular business hours, approximately 45 minutes after the store had opened that morning.  Smooth Vape employee Gavyn Barto was the only employee on duty at the time.  All four officers entered the store.  Defendant Krause walked directly to Barto at the counter and set a piece of paper down in front of him. Before Barto could even read the paper, however, Krause stated to Barto that the officers were "here on behalf of the DA to seize all delta-8 and delta-9 products because they are now illegal."

29.    Krause further stated that if Barto objected to the search or seizure, the officers would "shut down the store."

30.    The paper Krause had placed on the counter was not a search warrant. Instead, it was a one-page "MEMO" addressed, generically, "To: Store Owner/Store Manager" "From: Heather L. Adams, District Attorney, Lancaster County," dated April 17, 2023.  **Exhibit A**.  The document states that

> This Memo is to inform you that under Act 64 of Pennsylvania Law, otherwise known as the Controlled Substance, Drug, Device and Cosmetic Act, THC isomers including delta-8 THC and delta-10 THC are schedule I controlled substances.  Title 35 P.S. 780-101 et seq. Additionally, any product with a delta-9 concentration greater than .3% is also a schedule I controlled substance.

> Pursuant to my directive, Detectives with the [LCDTF] will be seizing all products in plain view labeled or advertised as containing Delta-8 THC or Delta-10 THC.  No charges will be filed if you cooperate fully with the [LCDTF].  Cooperation includes the immediate surrender to law enforcement of any such illegal products from the establishment, on or off site, and ceasing any future sales of such products.

31.     Barto informed the officers that he had to call Kaylee Stoneburner, the assistant manager.

32.     Barto also called Smooth Vape's owner, John Dolan, who then spoke with Defendant Krause.  Dolan asked why the officers claimed that the delta products were illegal. Dolan stated his understanding that any delta product with less than .3% delta-9 THC is legal.  The officer did not explain any legal authority, but simply said the officers were there on the orders of the District Attorney to take all delta-8 THC, delta-10 THC, or delta-11 THC products.

33.     Krause stated to Dolan that he was either going to shut down the store or he was going to take the products.

34.     Assistant Manager Stoneburner arrived within minutes, and asked the officers what was going on.  Defendant Krause presented Stoneburner with the letter from District Attorney Adams while simultaneously stating to Stoneburner that the officers were going to take the delta products or they were going to shut the store down.

35.     Stoneburner asked why they were not allowed to sell the delta-8 THC, delta-10 THC, and delta-11 THC products, because she understood that such products were entirely legal and had been sold openly to the public in Smooth Vape's stores, and by many other retailers, in Lancaster County and all over Pennsylvania, for years.

36.    Stoneburner felt that she did not get a straight answer as to why these products were supposedly now illegal.  Defendant Krause did not answer the question other than referring her to District Attorney Adams' letter.

37.    Defendant Krause did not ask Dolan, Barto, or Stoneburner for consent to search the store or to seize any products, he simply provided them with the ultimatum: either the officers were going to seize the products they wanted to seize, or they were going to shut down the store.

38.    Faced with this ultimatum, Smooth Vape had no choice but to capitulate, and Dolan declined to interfere with the officers' plans.  He knew that if they closed his store, he would then be prevented from selling not only the hemp-derived products at issue but also all the other merchandise Smooth Vape carries, such as vapor products and body jewelry.

39.    The officers then retrieved boxes from their vans, brought them into the store, and set them in front of the shelves.  The officers spent about 45 minutes to an hour in the store, carefully reading the labels, including the ingredient lists, on the packages.  If this deliberate review of the product reflected that a product contained any delta-8 THC, delta-10 THC, or delta-11 THC, the officers placed it into one of their boxes.

40.    The officers illegally seized tens of thousands of dollars' worth of merchandise and left with it.

41.    Before leaving, the officers forced Stoneburner to sign a form.  Defendant Krause threatened that if Stoneburner refused to sign the form, the store

would be shut down.  Stoneburner felt that she had no choice but to sign.  If the officers had not threatened to shut down the store, she would not have signed the form.

42.    Defendant Krause and two other LCDTF officers present also prepared and signed a seized property inventory form.  The form contains a printed statement attesting that "[t]he following property was taken/seized and a copy of this Receipt/Inventory with a copy of the Search Warrant and affidavit(s) (if not sealed) was personally served on (name of person)," and Kaylee Stoneburner's name was written in the blank.  **Exhibit B**.

43.    Contrary to this statement on the inventory form, signed by three Defendants, no warrant was presented before the officers' entry, search, and seizure of products.  No such warrant has subsequently been produced, either.

44.    While the officers were in the store, Barto observed four long-time customers enter the store at different times, each of whom saw the officers upon entering, and immediately turned around and left.  All of these customers are repeat purchasers of Smooth Vape's hemp-derived delta products.

45.    Following the raid, after the officers had left, two of the customers returned and spoke with Barto, who explained that the officers were from the drug task force and had confiscated all of Smooth Vape's delta-8 THC, delta-10 THC, and delta-11 THC products.  Both customers expressed their shock at this news, because they do not believe that such products are illegal.

Complaint                                    11

46.     Smooth Vape has lost tens of thousands of dollars in profits since the raid, due to its inability to sell any delta-8 THC, delta-10 THC, or delta-11 THC products at the Willow Street store, which had previously accounted for more than $15,000 in sales each month.

47.     Smooth Vape continues to sell delta-8 THC, delta-10 THC, and delta-11 THC products (as well as delta-9 THC products) at its stores in Dauphin and Lebanon Counties, without any interference from law enforcement.

## **Relevant Law**

48.     In 2016, the Pennsylvania Legislature amended the Agriculture Code by adopting a chapter on "industrial hemp research."   Act 2016-92, codified at 3 Pa.C.S. §§ 701 *et seq*.   The statute provides the Department of Agriculture of the Commonwealth of Pennsylvania the "powers and duties," "notwithstanding any other law to the contrary, to regulate and permit industrial hemp under this chapter in a manner consistent with the provisions of this chapter and all Federal laws, regulations, and orders."   3 Pa.C.S. § 703(b)(1).   This includes the power "[t]o establish, implement and administer an agricultural pilot program," that is, "a pilot program to study the growth, cultivation *or marketing* of industrial hemp."   *Id.* §§ 702, 703(b)(2) (emphasis added).

49.     "Industrial hemp" is defined in the chapter to mean "[t]he plant Cannabis sativa L. and any part of the plant, whether growing or not, with a delta-9 tetrahydrocannabinol concentration of not more than 0.3% on a dry-weight basis." *Id.* § 702.

Complaint                                          12

50.    The industrial hemp research statute provides that the Pennsylvania Department of Agriculture "shall have the following powers and duties:"

> (1) Notwithstanding any other law to the contrary, *to regulate and permit industrial hemp* under this chapter in a manner consistent with the provisions of this chapter and all Federal laws, regulations and orders.
>
> (2) To establish, implement and administer an agricultural pilot program to the extent funds are available.
>
> (3) To develop and implement permitting requirements, and regulations *if necessary*, to carry out the provisions of this chapter.
>
> (4) To issue, renew, deny, revoke, suspend or refuse to renew permits to conduct an *agricultural pilot program*.
>
> (5) To develop an application for registration.
>
> (6) To develop an application for permits.
>
> (7) To create and maintain a database of permitted institutions of higher education and sites *used to grow or cultivate* industrial hemp.
>
> …
>
> (9) To establish, through permit, restrictions for the use or reuse of seeds, crops *or products produced as the end result of an agricultural pilot program*.
>
> …

3 Pa.C.S. § 703(b) (emphasis added).

51.    As reflected in the setting out of specific powers and duties using specific language, the "industrial hemp" program authority vested in the Department includes authority to regulate the "marketing" of "products" produced as a result of an "agricultural pilot program."

52.    As for "growth and cultivation" of industrial hemp (notably distinct from the "marketing" of "products"), the statute limited this to "the [Pennsylvania Department of Agriculture] or an institution of higher education for the purposes of research conducted under an agricultural pilot program."  704(a).

53.     Critically, Section 706 of the industrial hemp statute provides that "[a]n activity conducted in compliance with this chapter *shall not be in violation of* the laws of the Commonwealth including" the Pennsylvania Controlled Substance, Drug, Device and Cosmetic Act (the act of April 14, 1072, P.L. 233, No. 64) (hereinafter the Pennsylvania CSA or Pennsylvania Controlled Substances Act) (emphasis added).

54.     In 2018—just two years after enactment of Pennsylvania's "industrial hemp" statutes—the federal Farm Bill was enacted, which removed "hemp" from the federal schedule of controlled substances.  *See* 21 U.S.C. §§ 802(16)(B), 812 sched. I(c)(17).

55.     Under Federal law, "[t]he term 'hemp' means the plant Cannabis sativa L. and any part of that plant, including the seeds thereof and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis." 7 U.S.C. § 1639o(1).

56.     The Pennsylvania Department of Agriculture has explained on its website that

> Through the 2018 Farm Bill, the federal government has changed the legal status of hemp.  It has been removed from regulation under the federal Controlled Substance Act, ending any restrictions on import or interstate movement of hemp seed, plants, or products.  However, the 2018 Farm Bill still requires that every site where hemp is *grown* be registered with the state or federal government under a program with requirements for inspection and testing. The PA Hemp General Permit explains the permitting process and requirements for hemp permitting in Pennsylvania. It can be found on the PDA hemp program webpage: http://agriculture.pa.gov/hemp.

Pennsylvania Department of Agriculture,
https://www.agriculture.pa.gov/Plants_Land_Water/hemp/Pages/Hemp-Program-FAQs.aspx (emphasis added) (last visited July 26, 2023).

57.     The 2018 Farm Bill allowed hemp to be grown commercially outside of the limitations of the 2016 Pennsylvania "Industrial Hemp" program.  Accordingly, the Pennsylvania Department of Agriculture observes on its public website that "the 2018 Farm Bill allowed hemp to be grown commercially and outside of a research pilot program."   Pennsylvania Dep't of Agriculture, Resources & Regulations, https://www.agriculture.pa.gov/Plants_Land_Water/hemp/Pages/Resources.aspx (last visited July 31, 2023).

58.     The Pennsylvania Department of Agriculture also has authority in this area under the Controlled Plants and Noxious Weeds Law, Act of Oct. 30, 2017, P.L. 774, No. 46, which added Chapter 15 to the Pennsylvania Agriculture Code, 3 Pa.C.S. 1501 *et seq.* (the Controlled Plants Act).  The Controlled Plants Act authorizes the Department of Agriculture, through the Controlled Plant and Noxious Weed Committee (Committee), to establish a controlled plant list and to add plants to or remove plants from the controlled plant list (3 Pa.C.S.A. § 1511(b)(3)(ii)(iii)).

59.     The Controlled Plants Act authorizes the Pennsylvania Department of Agriculture to issue General Permits, on a statewide or regional basis, for the research, marketing, retail, wholesale, transport, storage, warehousing, display, distribution, cultivation or propagation of controlled plants.  3 Pa.C.S. § 1513.

60.     The Committee added hemp to the Controlled Plant List and published such Notice in the *Pennsylvania Bulletin* on April 6, 2019.  49 Pa.B. 1667, Saturday Apr. 6, 2019.

61.     This decision to add hemp to the Controlled Plant List, enabling regulation under the Controlled Plants Act, was taken in light of, and in response to, the federal de-scheduling of "hemp" in the 2018 Farm Bill.  *See* Pa. Dep't of Agriculture, Notice, *General Permit Standards and Requirements for Hemp*, 53 Pa.B. 837 (p. 1-2, recitals H, I, and J).[1]

62.     Regulating under the authority of the Controlled Plants Act, the Department established a General Permit for hemp, "to establish requirements under which persons may apply to plant, grow, propagate or cultivate hemp in the Commonwealth for the purpose of research or commercial production."

63.     While the authority vested in the Pennsylvania Department of Agriculture under both the Industrial Hemp Act and the Controlled Plants Act extends to marketing and retail activities, the Department does not require any applications or permits to market or retail hemp-derived products.  The Department's website prominently confirms that "[t]here is not a state level permit/license requirement in Pennsylvania specifically for wholesaling, retailing or brokering

---

[1] This is the most recent version of such Notice.  But the General Permit program for hemp remains materially the same as it was established initially.  *See* prior versions of the Notice at 50 Pa.B. 6906, Saturday, Dec. 5, 2020; 51 Pa.B. 1831, Saturday, Apr. 3, 2021.

hemp and hemp products." Pennsylvania Dep't of Agriculture, Hemp Program Frequently Asked Questions.[2]

64.    The Pennsylvania Department of Agriculture also states on its home page for the hemp program that "[t]he department is committed to continuing to foster the growth of hemp as a profitable, sustainable and in-demand product."[3]

65.    The Pennsylvania Department of Agriculture's hemp web page directs viewers to the site of the Pennsylvania Hemp Steering Committee. *See* Pa. Dep't of Agriculture,

https://www.agriculture.pa.gov/Plants_Land_Water/hemp/Pages/Resources.aspx

(last visited Aug. 1, 2023).

66.    The Pennsylvania Hemp Steering Committee's website is hosted by the Commonwealth of Pennsylvania, and promotes the various end-uses of hemp, including through the following graphic available at its home page:

---

[2] https://www.agriculture.pa.gov/Plants_Land_Water/hemp/Pages/Hemp-Program-FAQs.aspx#
[3] https://www.agriculture.pa.gov/Plants_Land_Water/hemp/Pages/default.aspx

Complaint                                    17



Pa. Hemp Steering Committee, https://www.pa-hemp-steering-committee.org. (last visited Aug. 1, 2023).

67. The Hemp Steering Committee also publicly touts "cannabinoids" as particularly "valuable" chemicals derived from hemp flowers, explaining that "Cannabidiol" is one of "the most abundant cannabinoids in hemp" and has "been studied for [its] potential beneficial properties," followed by a graphic depicting various finished products, including, among many others, "Pharmaceuticals," "Consumables," "Medicine," "Sacrament," "Supplements," and "Vitamins."

Pa. Hemp Steering Committee, https://www.pa-hemp-steering-committee.org/hemp-101 (last visited Aug. 1, 2023).

## **Damages**

68.     Defendants' unlawful, intentional, willful, deliberately indifferent, reckless, and/or bad-faith acts and omissions caused the illegal seizure and effective destruction of tens of thousands of dollars' worth of Smooth Vape's inventory, and has prevented Smooth Vape from selling hemp-derived products with delta-8, delta-10,

and delta-11 from its Willow Street store since April 18, 2023, resulting in significant loss of revenue and business goodwill to present and which losses will continue into the future until relief is secured from this court.

69.     These injuries and damages to Smooth Vape were foreseeable to Defendants at the time of their acts and omissions.

70.     All of the acts and omissions committed by Defendants were done intentionally, unlawfully, maliciously, wantonly, recklessly, negligently, and/or with bad faith, and said acts meet all the standards for imposition of punitive damages.

## COUNT 1

### 42 U.S.C. § 1983:  Illegal Search and Seizure in Violation of the Fourth Amendment

71.     Plaintiff hereby incorporates by reference all of the preceding paragraphs.

72.     Under color of state law, Defendants illegally searched Smooth Vape's Willow Street storefront on or about April 18, 2023 without any warrant and without effective consent, in violation of Smooth Vape's rights under the Fourth Amendment to the United States Constitution.

73.     Under color of state law, Defendants illegally seized tens of thousands of dollars' worth of Smooth Vape's inventory on or about April 18, 2023 without any warrant and without effective consent, in violation of Smooth Vape's rights under the Fourth Amendment to the United States Constitution.

74.     Smooth Vape has sustained significant monetary damages as a direct and proximate result of the injuries set forth above.

## COUNT 2

### 42 U.S.C. § 1983: *Monell* Claim Against Defendant Lancaster County

75.    Plaintiff hereby incorporates by reference all of the preceding paragraphs.

76.    Defendant County of Lancaster, by and through its final policymaker District Attorney Heather Adams, was at all times relevant to this Complaint responsible for the policies, practices, and customs of the Lancaster County District Attorney's Office.

77.    Defendant Lancaster County had and has a policy, practice, or custom of unconstitutional enforcement under the Pennsylvania Controlled Substance Act against hemp-derived products that may legally be possessed and sold in Pennsylvania.  This unconstitutional policy, practice, or custom includes the direction, encouragement, and condoning of illegal warrantless searches and seizures of businesses in Lancaster County by law enforcement without effective consent and illegal seizure of hemp-derived products.

78.    Defendant Lancaster County, by and through its final policymaker, Defendant Adams, decided to undertake the intimidation and illegal search and seizure of Smooth Vape at its Willow Street storefront on or about April 18, 2023, and continues to implement this illegal intimidation through stated threats of prosecution if Smooth Vape were to resume selling products that Smooth Vape has every legal right to sell.

**COUNT 3**

**Declaratory Judgment**

79.    Plaintiff hereby incorporates by reference all of the preceding paragraphs.

80.    Smooth Vape's products that were seized by Defendants are legal to possess and retail in Pennsylvania.

81.    Pennsylvania's Industrial Hemp law and Controlled Plants Act and associated regulations, as well as the statements and permitting policies of the Pennsylvania Department of Agriculture, expressly and impliedly limit the scope of Pennsylvania's Controlled Substance Act with regard to hemp-derived products.

82.    The Industrial Hemp Law expressly vests the Pennsylvania Department of Agriculture with authority to regulate not just the growing, cultivating, and processing of "industrial hemp," but also the marketing and retail of finished hemp-derived products.  3 Pa.C.S. § 703(b) (vesting the Department with express authority to "regulate and permit industrial hemp under this chapter in a manner consistent with the provisions of this chapter and all Federal laws, regulations and orders," "notwithstanding any other law to the contrary"); *id.* § 702 (defining "Agricultural pilot program" to mean "[a] pilot program to study the growth, cultivation or marketing of industrial hemp").

83.    More specifically, the Industrial Hemp Law vests the Department with the "power and dut[y]" to "establish, *through permit*, restrictions for the use or reuse of seeds, crops *or products produced as the end result of an agricultural pilot program*."  Id. § 703(b)(9) (emphasis added).

84.   The statute further explains that the Department has the "power and dut[y]" "[t]o develop and implement permitting requirements, and regulations if necessary, to carry out the provisions of this chapter."  3 Pa.C.S. § 703(b)(3).

85.   The Pennsylvania Department of Agriculture is therefore expressly vested with authority and the "dut[y]" to implement permitting requirements for all phases of the growth, cultivation, processing, and retail marketing of industrial hemp and its end products.  Further, in light of the 2018 Farm Bill, the Department has expressly recognized that hemp products to be so regulated are not limited to products grown by the Department itself or by educational institutions.  Instead, the Department affirmatively observes on its public website that "the 2018 Farm Bill allowed hemp to be grown commercially and outside of a research pilot program."

86.   Additionally, upon the designation of hemp as a controlled plant, Pennsylvania's Controlled Plants Act expressly gave the Department of Agriculture the authority to establish and administer permitting requirements not just for growing, cultivating, and processing of hemp, but also its marketing and retail. 3 Pa.C.S. § 1513 ("General permits may be issued for the research, marketing, retail, wholesale, transport, storage, warehousing, display, distribution, cultivation or propagation of controlled plants[.]").

87.   The Pennsylvania Department of Agriculture observes that delta-9 THC is "the intoxicating component of cannabis."  2023 Hemp General Permit Notice at 4

(defining "Decarboxylation").[4]   Accordingly, all relevant definitions distinguish legal hemp from marijuana by reference to the concentration of *delta-9* THC.  3 Pa. C.S.A. § 702 (defining "Industrial hemp" as "[t]he plant Cannabis sativa L. and any part of the plant, whether growing or not, with a delta-9 tetrahydrocannabinol concentration of not more than 0.3% on a dry-weight basis."); 2023 Hemp General Permit Notice (defining "Hemp" as "[t]he plant *Cannabis sativa L.* and any viable part of that plant, with a delta-9 tetrahydrocannabinol (THC) concentration of not more than 0.3 percent on a dry weight basis.").

88.    The Pennsylvania Department of Agriculture, following the 2018 amendments to the Federal Controlled Substances Act de-scheduling hemp, has expressly recognized that hemp and hemp-derived products may be legally possessed, transported, and sold in Pennsylvania, so long as they contain less than 0.3% delta-9 THC.

89.    The Pennsylvania Department of Agriculture, which has authority to regulate retail of hemp-derived products, both expressly promotes the many end uses of hemp-derived products, and expressly states that no statewide permit or license is required to market such products.

90.    As demonstrated above, the Pennsylvania Department of Agriculture is the agency vested not just with express authority, but the "duty," to regulate retail of hemp-derived products *through permitting requirements*, and the Department has

---

[4] *See also id.* (defining "Delta-9 tetrahydrocannabinol" thus: "Also referred to as "Delta-9 THC" or "THC" is the primary psychoactive component of cannabis. For the purposes of this General Permit, delta-9 THC and THC are interchangeable.").

decided that no permit is required to legally market hemp-derived products with no more than 0.3% delta-9 THC in Pennsylvania.  Such activity is in compliance with state policy and is not a violation of the Pennsylvania Controlled Substance Act.  *See* 3 Pa.C.S. § 706.

91.    The  Pennsylvania  Department  of  Agriculture  even  promotes "Consumables," "Supplements," "Vitamins," "Shampoo," "Bath Gels," "Lotions," and other finished products derived from the "valuable" "cannabinoid" chemicals derived from hemp.

92.    Defendant District Attorney Adams acknowledges that the Industrial Hemp Law and Controlled Plants Act statutes limit the scope of the Pennsylvania Controlled Substances Act.  The "MEMO" that Defendant task force members presented to Smooth Vape employees on April 18, 2023 reflects this fact, because in the memorandum, Defendant Adams acknowledges that "any product with a delta-9 concentration *greater* than .3% is also a schedule I controlled substance."  Exhibit A (emphasis added).  The delta-9 concentration marker is found in the Industrial Hemp and Controlled Plant statutes, *not* in the Pennsylvania Controlled Substance Act. Defendant Adams' reference to this marker, then, is a recognition that the definition of "industrial hemp" and "hemp" in these two statutes applies to distinguish legal hemp and hemp products from other substances derived from the plant Cannabis sativa L. that remain controlled under the Pennsylvania Controlled Substances Act.

93.    While Defendant Adams is correct in recognizing that the definitions in the Industrial Hemp and Controlled Plant laws limit the scope of the Controlled

Substance Act, she errs as a matter of law in reading the definition to mean that hemp-derived products with *no* delta-9 THC (such as those seized from Smooth Vape) are illegal.

94.    Defendant Adams' "MEMO" claims that "under Act 64 … THC isomers including delta-8 THC and delta-10 THC are schedule I controlled substances." Her position is apparently that, because the statutory definitions distinguish "industrial hemp" and "hemp" with respect to a certain concentration of delta-9 THC, the only products legalized as a result of these laws are those hemp-derived products (1) *with delta-9* THC (2) but under the designated concentration, and any products reflecting any trace of any *other* THC isomers (delta-8, delta-10, etc.) are illegal, even if they have *zero* delta-9 THC.

95.    Defendant Adams' understanding of the statutory definition(s) contravenes the clear text of those statutes. A product with zero delta-9 THC has no more than 0.3% THC, and thus is regulated as a legal hemp-derived product rather than a controlled substance.

96.    Defendant Adams' understanding also contradicts the publicly-declared position of the state agency with authority over regulating and permitting hemp-derived products.

97.    Defendants confiscated tens of thousands of dollars' worth of inventory from Smooth Vape's Willow Street storefront without any evidence that such products contained any delta-9 THC.

98. Smooth Vape requests a declaratory judgment that, in light of the Industrial Hemp law and Controlled Plants Law and the regulations and policies of the Department of Agriculture thereunder, hemp-derived products with no more than 0.3% delta-9 THC, including products without any delta-9 THC, are not subject to enforcement as scheduled substances under the Pennsylvania Controlled Substance Act.

## PRAYER FOR RELIEF

Plaintiff prays for the following relief:

1. An award of compensatory damages for the violation(s) of Plaintiffs constitutional rights;

2. An award of punitive damages for the violation(s) of Plaintiff's constitutional rights;

3. A declaratory judgment that products derived from Cannabis sativa L. that contain no more than 0.3% delta-9 THC, including products without any delta-9 THC, are not subject to enforcement under the Pennsylvania Controlled Substance Act;

4. Reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988 or any other applicable statute or authority; and

5. Any other relief that the Court deems just and appropriate.

Respectfully submitted,


*/s/ Tina O. Miller*
TINA O. MILLER
PA ID No. 71101
COMBER MILLER, LLC
300 Koppers Building
436 Seventh Avenue
Pittsburgh, PA  15219
412-894-1380
412-291-2109 (fax)
tmiller@combermiller.com


*/s/ Jerad Wayne Najvar*
JERAD WAYNE NAJVAR
Texas Bar No. 24068079
jerad@najvarlaw.com
NAJVAR LAW FIRM PLLC
2180 North Loop West, Suite 255
Houston, TX 77018
Phone:        (281) 404-4696
Facsimile:    (281) 582-4138

*Request to be admitted *pro hac vice*

Attorneys for Plaintiff


DATED: August 4, 2023

Complaint                          28