IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SMOOTH VAPE LLC, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| LANCASTER COUNTY et al., | : | CIVIL ACTION NO. 5:23-cv-03000-CFK |
| | : | |
| Defendants. | : | |
| | : | |
| | : | |

**BRIEF IN SUPPORT OF DEFENDANTS, LANCASTER COUNTY, LANCASTER COUNTY DISTRICT ATTORNEY HEATHER ADAMS, AND DETECTIVE (RETIRED) JEFFREY KRAUSE'S MOTION FOR JUDGMENT ON THE PLEADINGS**

Defendants, Lancaster County, Lancaster County District Attorney Heather Adams, and Detective (Retired) Jeffrey Krause (collectively hereinafter "Defendants" or "Lancaster County Defendants"), by and through their attorneys, MacMain Leinhauser PC, hereby file the following Brief in Support of their Motion for Judgment on the Pleadings pursuant to Fed. R. Civ. P. 12(c) to dismiss all Counts of Plaintiff's Complaint (ECF 3): Count I (Illegal Search and Seizure Claim), Count II (*Monell* claim), and Count III (Declaratory Judgment).

**I.     INTRODUCTION**

The present case involves the lawful, consensual, and plain view confiscation of illegal controlled substances by the Lancaster County Drug Task Force at Plaintiff Smooth Vape's place of business which Smooth Vape has not challenged through the available avenues in state court, but instead filed the present §1983 suit. As set forth in Plaintiff's Complaint and Defendants' detailed Answer, the items at issue have been determined by the U.S. Department of Justice's Drug Enforcement Agency and the Pennsylvania State Police, upon whom District Attorney Adams relied, to be illegal, and thus the confiscation of these items, which were in plain view

1

and for sale, and for which Plaintiff's agent signed a written consent, were properly and lawfully seized. As such, Plaintiff's claims fail as a matter of law as there was no constitutional violation committed.

Further, even if, *arguendo*, This Court declines to dismiss the claims at this stage on the merits, District Attorney Heather Adams must be afforded absolute prosecutorial immunity and Detective Krause should be afforded qualified immunity.

## II.   SUMMARY OF FACTS

This case involves a dispute between the parties as to the legality of Delta-8 THC, Delta-10 THC, and Delta-9 THC (with a THC content of greater than 0.3% by dry-weight), and the confiscation of Plaintiff's products containing the aforementioned Delta THC substances by Defendants. *See*, Plaintiff's Complaint (ECF 3) and Defendants' Answer (ECF 11).

On April 18, 2023 Detective (Retired) Jeffrey Krause, in uniform, and other uniformed officers of the Lancaster County Drug Task Force (hereinafter "LCDTF") entered Plaintiff's store, during regular business hours, at 2600 Willow Street Pike, Willow Street, Pennsylvania. *See,* ECF 3, at 7-8; *also see* ECF 11, at 4. Detective Krause approached Plaintiff's employee Gavyn Barto and informed Barto that the officers were there on behalf of the office of District Attorney Adams with instructions to seize Delta THC products. *See* ECF 3, at 8; *also see* ECF 11. Detective Krause presented a letter to Barto, written by District Attorney Adams, dated April 17, 2023. *See* ECF 3, at 8; *also see* ECF 11, at 4. Barto proceeded to contact Plaintiff's assistant manager, Kaylee Stoneburner. *See* ECF 3, at 9; *also see* ECF 11 at 4-5. Defendant Krause spoke with Stoneburner and another person via phone who represented himself to be the store's owner, John Dolan, informing them of the officers' purpose. *See* ECF 3, at 9; *also see* ECF 11, at 6.

Stoneburner arrived at Plaintiff's store location and Detective Krause presented Stoneburner with District Attorney Adam's letter. *See* ECF 3, at 9. Stoneburner orally consented to the search and signed a written search-consent form. *See* ECF 3, at 10; *also see* ECF 11, at 5. Without objecting, Dolan apparently, "Declined to interfere with the officers' plans." *See* ECF 3, at 10.

Detective Krause and the LCDTF officers proceeded to confiscate Plaintiff's products deemed to be illegal, as stated in Plaintiff's Complaint, "Carefully reading the labels, including the ingredients lists, on the packages. If this deliberate review of the product reflected that a product contained any delta-8 THC, delta-10 THC, or delta-11 THC, the officers placed it into one of their boxes." *See* ECF 3, at 10. Detective Krause and the officers then prepared, signed, and had Stoneburner sign, a seized-property-inventory form, accounting for all products taken, a copy of which Detective Krause provided to Plaintiff. *See* ECF 3, at 11.

## III. <u>PROCEDURAL HISTORY</u>

Plaintiff's Complaint was filed in this Court on August 4, 2023, naming as Defendants, Lancaster County, Lancaster County District Attorney Heather Adams, and Lancaster County Detective (Retired) Jeffrey Krause. *See* ECF 3. Collectively, all Lancaster County Defendants filed an *Answer with Affirmative Defenses to Plaintiff's Complaint* on October 6, 2023. *See* ECF 11. After the unfortunate passing of the Honorable Judge Edward G. Smith, this case was reassigned to the Honorable Judge Chad F. Kenney.

## IV. <u>STATEMENT OF QUESTIONS PRESENTED</u>

Should This Court Enter Judgment On Behalf Of Defendants Regarding Plaintiff's Claim Of A Constitutional Violation?

    Suggested Answer:   *Yes.*

Should This Court Enter Judgment For Defendant Adams On All Claims Based On Absolute Immunity?

      Suggested Answer:    *Yes.*

Should This Court Enter Judgment for Defendant Krause On All Claims Based On Qualified Immunity?

      Suggested Answer:    *Yes.*

Should This Court Enter Judgment for Defendant Lancaster County On Plaintiff's *Monell* Claim As There Was No Underlying Constitutional Violation?

      Suggested Answer:    *Yes.*

## V.   STANDARD OF REVIEW

After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings. Fed. R. Civ. P. 12(c). The standard used in deciding a motion for judgment on the pleadings is identical to the standard of review under Rule 12(b)(6). *Miller v. Reading Police Dep't*, No. 18-5178, 2019 U.S. Dist. LEXIS 99702, at *3-4 (E.D. Pa. June 13, 2019) (Schmehl, J.). "The only notable difference between these two standards is that the court in a motion on the pleadings reviews not only the complaint but also the answer and written instruments attached to the pleadings." *Phillips v. Transunion, LLC*, 2012 U.S. Dist. LEXIS 58750, at *3 (E.D. Pa. April 25, 2012).

As with a motion to dismiss under Rule 12(b)(6), to survive a motion for judgment on the pleadings, a complaint must contain factually plausible averments that the alleged wrongdoing occurred and that there is "more than the mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). A complaint that fails to present factually plausible claims or which presents claims that are foreclosed as a matter of law should be dismissed. *Id.* at 678.

4

## VI. ARGUMENT

Due to the illegality under both federal and state law, of the complained-about seized products, and the manner in which the products were searched and seized, as described in Plaintiff's Complaint, Plaintiff's claims against Lancaster County, Lancaster County District Attorney Adams, and Detective (Retired) Jeffrey Krause all fail as a matter of law, and thus judgment must be entered for all Defendants. Indeed, Plaintiff's Complaint itself asserts facts that support a legally valid search and seizure, thus invalidating Plaintiff's claim of a constitutional violation. Due to the lack of a constitutional violation, Plaintiff's *Monell* claim therefore fails.

Furthermore, Plaintiff's Complaint fails to allege facts that suggest District Attorney Adams' absolute immunity or Detective Krause's qualified immunity should be breached.

In the alternative, this Court should abstain from deciding the remaining claims until a state court can rule on the legality of the products, or Plaintiff follows the proper procedure for remedying the alleged injury in a state court proceeding.

### A. There Was No Constitutional Violation

Consistent with the duty to enforce the law and pursuant to caselaw authorizing searches of businesses open to the public, believed to be selling illegal products, coupled with consent of a suspect and the existence of illegal products in the plain view of an officer, Detective Krause and the LCDTF officers effectuated a legal search and seizure of Plaintiff's illegal substances, thus negating Plaintiff's claim of a constitutional violation.

According to both the U.S. Department of Justice's Drug Enforcement Agency and the Pennsylvania State Police, upon whom District Attorney Adams relied, the Delta-8 THC, Delta-9

over a dry-weight of 0.3%, and Delta-10 THC products are illegal under both federal United States law and Pennsylvania state law. *See* ECF 11-1; *also see* ECF 11-2.

A sister-court, the Federal District Court for the Westen District of Pennsylvania, took judicial notice of a letter authored by the U.S. Department of Justice's Drug Enforcement Agency's Dr. Terrence L. Boos from February 13, 2023:

> "The court takes judicial notice that on February 13, 2023, the United States Drug Enforcement Administration ('DEA') issued a letter, in response to an inquiry, concluding that Delta-8 and Delta-9 continued to be controlled substances. . . The DEA explained that because Delta-8 and Delta-9 do not occur naturally and can only be obtained synthetically, those substances do not fall within the definition of 'hemp.' . . . . In other words, according to the DEA, Delta-8 and Delta-9 are not 'hemp.' In short, Delta-8 remains a controlled substance. Although Delta-10 was not directly referenced in the DEA's letter, there is no basis (in the record before the court) to believe that the DEA will treat Delta-10 in a different manner."

*U.S. v. Rice*, 2023 U.S. Dist. LEXIS 108149*, *7-9 (W.D.P.A. 2023).

This same letter was available to District Attorney Adams prior to her directive to confiscate Plaintiff's Delta THC products, and formed part of her basis to initiate the confiscation. *See* ECF 11-1.

In a similar letter, also available to District Attorney Adams prior to this incident, Pennsylvania State Police Scientific Services Division Director Deborah Calhoun noted that as the drug-scheduling authority of the Commonwealth of Pennsylvania in accordance with Pennsylvania legislature, as of April 27, 2022, the Pennsylvania State Police classify, "delta 8 THC and delta 10 THC, [as] schedule 1 substances according to the PA Drug Act and will be reported as Schedule 1 substances." *See* ECF 11-2.

Both above-mentioned letters were used by District Attorney Adams in her decision to direct LCDTF officers to investigate Plaintiff's store, as well as the knowledge of other Pennsylvania District Attorneys doing the same within their respective jurisdictions. District

Attorney Adams also relied on a comprehensive PowerPoint provided by the Pennsylvania State Police Bureau of Forensic Services regarding the classification of THC and various Delta THC isomers. *See* ECF 11-3.

### **Plain View Search and Seizure**

Consistent with the plain view doctrine, a law enforcement officer who is lawfully in a place by which they can observe an illegal item can seize apparent contraband without a warrant, so long as the officer has probable cause. *See Horton v. California*, 496 U.S. 128 (1990).

According to *Horton*, inadvertence is not a required condition of a plain view seizure. 496 U.S. at 130.

> "[A]n essential predicate to any valid warrantless seizure of incriminating evidence [is] that the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed. There are, moreover, two additional conditions that must be satisfied to justify the warrantless seizure. First, not only must the item be in plain view, its incriminating character must also be 'immediately apparent.' … Second, not only must the officer be lawfully located in a place from which the object can be plainly seen, but he or she must also have a lawful right of access to the object itself."

*Id*, at 137.

Put succinctly by the Third Circuit: "Under the plain view doctrine, officers may seize incriminating evidence they come across if (1) they have not 'violated the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed'; (2) 'the incriminating character of the evidence [is] immediately apparent'; and (3) they 'have a lawful right of access to the object itself.'" *United States v. Dyer*, 54 F.4th 155, 158 (3d Cir. 2022) (quoting *United States v. Menon*, 24 F.3d 550, 559 (3d Cir. 1994)).

As stated by the Pennsylvania Superior Court:

> "It is true that a businessman does not possess a reasonable expectation of privacy in commercial premises to the extent that he knowingly exposes the premises to the

7

general public. State inspectors, like any other members of the public, are free to enter retail stores during normal business hours and observe merchandise on display." *Commonwealth v. Buckman*, 574 A.2d 697, 705 (Pa. Super. Ct. 1990) (internal citations omitted).

It is undisputed that Detective Krause and the LCDTF officers entered Plaintiff's store, which is open to the public, during regular business hours, after the store had opened for business. *See* ECF 3 at 8. Consistent with established case law, Detective Krause and the officers conducted a lawful search and seizure when the illegal products were seen on Plaintiff's shelves, for sale, for which Plaintiff cannot claim an expectation of a right to privacy in the products. Therefore, Plaintiff's claim of an illegal search and seizure fails as a matter of law.

### **Consent to Search and Seizure**

This Court has held, "There is no need to obtain a warrant to search premises where voluntary consent has been obtained, 'either from the individual whose property is searched or from a third-party who possesses common authority over the premises.'" *United States v. Sosa*, No. 05-44-1, 2005 U.S. Dist. LEXIS 64116, at *10-11 (E.D. Pa. Dec. 2, 2005) quoting *Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990).

Consistent with the consent doctrine, a law enforcement officer can search and seize products from a business with the consent of an owner or store manager, regardless of whether a warrant is acquired or presented.

> "Even where a person's authority to consent to a search is later questioned, or is questionable, if the officers, at the time of obtaining such consent, reasonably believed that the person had authority to consent to the search, the search does not violate the Fourth Amendment.' *See Illinois v. Rodriguez*, 497 U.S. 177, 188-89 (('as with other factual determinations bearing upon search and seizure, determination of consent to enter must 'be judged against an objective standard: would the facts available to the officer at the moment ...warrant a man of reasonable caution in the belief' that the consenting party had authority over the premises') (citing *Terry v. Ohio*, 392 U.S. 1, 21-22 (1968))."

*United States v. Sosa*, No. 05-44-1, 2005 U.S. Dist. LEXIS 64116, at *11 (E.D. Pa. Dec. 2, 2005).

Plaintiff's Complaint does not allege that Detective Krause ever represented that the officers were there with a warrant, but rather according to the Complaint, Detective Krause both presented District Attorney Adams' letter to Plaintiff upon entry into the store and also explained the letter's contents. *See* ECF 3, at 8-10. While Plaintiff's Complaint alleges that Plaintiff's employees and owner were fearful of the store being shut down if consent was not given, reluctance to consent is not enough to negate consent.

### Legal Search and Seizure

Per Plaintiff's Complaint, Detective Krause seized the illegal Delta THC products in plain view and with the consent of Plaintiff's manager, satisfying two separate exceptions to the Fourth Amendment's warrant requirement.

For the foregoing reasons, being that Delta 8, Delta 10, and Delta 9 THC (over 0.3% dry-weight) are illegal under federal and state law, Detective Krause entered Plaintiff's business while it was open to the public, and the complained-about items were in plain view, seized with the consent of Plaintiff's manager, there was no violation of Plaintiff's constitutional rights. Therefore, this Court must enter judgment for Defendants on Plaintiff's claim for an illegal search and seizure.

### B. District Attorney Adams Must Be Afforded Absolute Immunity

Setting aside whether a constitutional violation occurred, Defendant District Attorney Adams' role entitles her to Absolute Immunity in performing her duties as the chief prosecutor of Lancaster County. These duties include the synthesis of law to determine the legality of products being sold in Lancaster County, the function of directing detectives to investigate

whether a store is selling illegal products, the directing of law enforcement officers to seize illegal products, and the ultimate decision of whether or not to file charges against the seller of illegal products.

According to this Court's sister district:

> "'[A]s a matter of logic, absolute immunity must also protect the prosecutor from damages suits based on his decision not to prosecute.' To hold otherwise would expose prosecutors to liability when they decided not to prosecute, with the result that they might inappropriately consider their potential liability when making prosecution decisions."

*Crane v. Cumberland Cty.*, No. 1:CV-99-1798, 2000 U.S. Dist. LEXIS 22489, at *17 (M.D. Pa. June 16, 2000) (quoting *Schloss v. Bouse*, 876 F.2d 287, 290 (2d Cir. 1989). *See also Imbler v. Pachtman*, 424 U.S. 409 (1976).

Therefore, as a matter of public policy, whether or not charges are ultimately filed should not be a determining factor for whether absolute immunity attaches to a prosecutor. Rather, a county's chief prosecutor must be given the discretion to decide to take harmful substances off the street without having to prosecute the substance's seller in order to protect herself from civil liability.

Setting aside the fact that there was no constitutional violation in the first place, liability could not attach to District Attorney Adams based on the foregoing analysis of absolute immunity.

Nevertheless, according to precedential case law, even if this Court declines to grant absolute immunity for District Attorney Adams, she should still be entitled to qualified immunity. *See Yarris v. County of Delaware*, 465 F.3d 129 (3d Cir. 2006).

    **C.**    **Detective Krause Must Be Afforded Qualified Immunity**

As explained above, Detective Krause's conduct was consistent with settled case law regarding his entrance into Plaintiff's store and the seizure of the Delta THC products.

Setting aside the fact that there was not a violation in the first instance, Detective Krause, at minimum, is entitled to qualified immunity as it was not clearly established that Detective Krause was not authorized to follow the directions of District Attorney Adams by seizing Plaintiff's products regardless of whether this Court determines the legality of said products, or whether Plaintiff's right to sell or possess Delta THC products is protected under federal or state law. Any reasonable officer presented with the facts before the LCDTF officers and directed by the District Attorney would reasonably believe they not only have probable cause to search and seize the Delta THC products but would be derelict in their duties to choose not to follow this directive. Furthermore, as explained above, the officers only confiscated Plaintiff's products that were in plain view with the consent of Plaintiff's manager Stoneburner.

Qualified immunity operates "to ensure that before they are subjected to suit, officers are on notice that their conduct is unlawful." *Hope v. Pelzer,* 536 U.S. 730, 739 (2002). The defense of qualified immunity shields government officials from liability whenever "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *McGreevy v. Stoup,* 413 F.3d 359, 364 (3d. Cir. 2005) (quoting *Harlow v Fitzgerald,* 457 U.S. 818 (1982)). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law." *Stanton v. Sims,* 571 U.S. 3, 6 (2013) (per curiam) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 734 (2011)).

In *Curly v. Klem,* the Third Circuit discussed the two-step inquiry that courts must undertake in determining whether a government official is entitled to qualified immunity. 298 F.3d 271 (3d Cir. 2002).[1]  First, the court must decide whether the facts alleged "show the

---

[1] The Supreme Court in *Pearson v. Callahan*, held that strict adherence to the two-prong analysis outlined in *Saucier* in a specific order is no longer the mandatory analysis. 555 U.S. 223, 236 (2009) Specifically,

11

officer's conduct violated a constitutional right." *Id.* at 277. If the facts, when viewed in the light most favorable to the plaintiff, do not show that the officer violated a constitutional right, then plaintiff's § 1983 claim must fail. *Id.* Second, the court must ask whether the right was clearly established at the time he acted. "Clearly established" in this context means "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* In fact, the Supreme Court in *Ashcroft v. al-Kidd*, held that an "official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of the right are so sufficiently clear that *every reasonable official would have understood that what he is doing violates that right*." 563 U.S. 731, 741 (2011) (emphasis added). Moreover, "[t]his inquiry . . . must be undertaken in light of the specific context of the case, not as a broad general proposition." *Curly*, 298 F.3d at 277.

To overcome qualified immunity, a plaintiff must demonstrate that every reasonable official would understand that what he is doing is unlawful based "only on the facts that were knowable to the defendant officer." *James v. N.J. State Police (In re Gibbons),* 957 F.3d 165, 169 (3d Cir. 2020) (Porter, J.). It is an objective question, under which "[an officer]'s subjective beliefs…are irrelevant." *Id.,* (quoting *Anderson v. Creighton,* 483 U.S. 635, 641 (1987)). Stated another way, "in most cases, a plaintiff must show that a right is clearly established because 'the violative nature of *particular* conduct [was] clearly established.'" *James,* 957 F.3d at 169 (citing, *Ziglar v. Abbasi,* 137 S. Ct. 1843, 1866 (2017) (emphasis added).

---

"[W]hile the sequence set forth there is often appropriate, it should no longer be regarded as mandatory. The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."

*Id*.

12

As the Third Circuit has explained, this is a high hurdle for Plaintiff to overcome because qualified immunity provides "ample protection to all but the plainly incompetent, or those who knowingly violate the law." *Blackhawk v. Pennsylvania*, 381 F.3d 202, 215 (3d. Cir. 2004*)*. "If the law did not put the officer on notice that his conduct would be clearly unlawful . . . qualified immunity is appropriate." *Id*. Moreover, qualified immunity is not voided even if there is a failure to accurately determine what the law requires, unless that determination is clearly unreasonable. *Saucier v. Katz,* 533 U.S. 194, 205 (2001).

Recently the Supreme Court stressed in *White v. Pauly*, that it was "again necessary to reiterate the longstanding principle that 'clearly established law' should *not* be defined 'at a high level of generality.'" 137 S. Ct. 548, 552 (2017). The Court opined that if the specificity to the facts of the case is not enforced, "plaintiffs would be able to convert the rule of qualified immunity into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." *Id* (citing *Anderson* v. *Creighton*, 483 U. S. 635, 639 (1987)).

Furthermore, a plaintiff bears the burden of "identify[ing] a case where an officer acting under similar circumstances [, as the defendant officer,] was held to have violated the [constitutional provision at issue]." *In re Gibbons.* 2020 U.S. App. LEXIS 12707 *8 (3d Cir. April. 21, 2020). In evaluating whether a plaintiff has met this burden, the Courts look at whether a clearly established right was established by: (1) binding Supreme Court precedent; (2) binding Third Circuit precedent; or (3) a "robust consensus of cases of persuasive authority in the Court of Appeals." *Id.* at *9 (quoting *Bland v. City of Newark*, 900 F3d 77, 87 (3d Cir. 2018). The facts of the cited precedent must present a sufficiently similar factual scenario to the scenario faced by the defendant officers at the "high 'degree of specificity'" that the Supreme Court precedent requires. *Id.*, at *11; *see also District of Columbia v. Wesby,* 138 S. Ct. 577, 590 (2018).

In *Kelly v. Borough of Carlisle*, the Third Circuit held that an officer who reasonably relies on the legal advice of a prosecutor, and acts in accordance with that advice, should be afforded qualified immunity, absent a showing that the compliance by the officer was unreasonable. 622 F.3d 248, 256 (3d Cir. 2010). The decision in *Kelly* is consistent with the law in other jurisdictions. *See, e.g.*, *Poluakis v. Rogers*, 2009 U.S. App. LEXIS 17714 (11th Cir. Aug. 10, 2009) (unpublished); *Ginter v. Skahill*, 2008 U.S. App. LEXIS 24635 (3d Cir. Oct. 28, 2008) (unpublished); *Gray v. City of Los Angeles*, 267 Fed. Appx. 589 (9th Cir. 2008); *Cox v. Hainey*, 391 F.3d 25, 35-36 (1st Cir. 2004); *Frye v. Kansas City Missouri Police Dep't*, 375 F.3d 785, 792 (8th Cir. 2004); *Hollingsworth v. Hill*, 110 F.3d 733, 741 (10th Cir. 1997); *Ortiz v. Van Auken*, 887 F.2d 1366, 1371 (9th Cir. 1989); *Hernandez v. Washoe*, 2009 U.S. Dist. LEXIS 4847 at *7-8 (D. Nev. Jan. 23, 2009); *Lojas v. Washington*, 2008 U.S. Dist. LEXIS 32940 at *18-19 (E.D. Wash. Apr. 22, 2008).

In this case, setting aside the apparent illegality of the Delta THC products, any reasonable law enforcement officer, sent by the District Attorney to an establishment that is not only known to sell, but also advertises the sale of Delta THC products, would have a reasonable basis to search for and seize items designated as illegal by said District Attorney. Even if this Court finds that the complained-about Delta THC products are not illegal, Defendant Krause's belief that the products were illegal based on the information and direction he received from District Attorney Adams and his many years of experience enforcing drug laws, would satisfy the requirements for qualified immunity.

### D. **Plaintiff's *Monell* Claim Against Defendant Lancaster County Fails**

Plaintiff's Complaint asserts a *Monell* claim against Lancaster County for Defendant Adams' decision as the chief prosecutor of Lancaster County to order the seizure of illegal

substances and for warning Plaintiff not to sell Delta THC products in the future. *See* ECF 3 at 21. Plaintiff asserts this *Monell* claim stating, "Defendant Lancaster County had and has a policy, practice, or custom of unconstitutional enforcement under the Pennsylvania Controlled Substances Act against hemp-derived products." *Id*.

In order for a Plaintiff to be successful on a *Monell* claim:

> "A municipality is liable under Section 1983 where a plaintiff demonstrates that a municipality itself, through implementing a municipal policy or custom, causes a constitutional violation. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Importantly, without an underlying constitutional violation, there can be no Monell claim. *Customers Bank v. Municipality of Norristown*, 942 F. Supp. 2d 534, 546 (E.D. Pa. 2013)."

*Knellinger v. York St. Prop. Dev.*, LP, 57 F. Supp. 3d 462, 471 (E.D. Pa. 2014). *See also*, *Kiriakidis v. Borough of Vintondale*, 609 Fed. Appx. 713 (3rd Cir. 2015); *Strunk v. Chester County*, 2015 U.S. Dist. LEXIS 24523 at *13-14 (E.D. Pa. 2015).

As stated above, since there was no violation in the first instance, there can be no derivative *Monell* claim.

### E.   In the Alternative, Should This Court Not Find the Products to Be Illegal Under Federal Law, This Court Should Abstain From Hearing This Case

While Defendants maintain that Plaintiff's seized Delta THC products are illegal under both federal and state law, should this Court either determine that the products are not illegal under federal law, or if this Court decides to decline to rule on the federal legality of these products, this Court should abstain from ruling on the legality of the products under Pennsylvania controlled substances laws. This case has reached this Court through federal question jurisdiction by way of Plaintiff's claims of constitutional violations, with Plaintiff's request to this Court to declare Delta THC products to be legal.

While to-date, Plaintiff has not been charged with possession or intent to distribute illegal Schedule 1 substances under Pennsylvania law, Defendants are not barred from doing so.

Under the Pennsylvania Rules of Criminal Procedure, Rule 588 provides the opportunity for a person or entity who believes to be wrongfully seized of property to petition the state to return said property. Rather than utilize a simple and straightforward local process, Plaintiff has burdened this Court with the present suit, seeking a declaration that an illegal synthetic substance be deemed legal, tacking on constitutional claims after officers performed a text-book search and seizure of illegal products in accordance with the plain view and consent doctrines. As can be gleaned from Plaintiff's Complaint, which appears more as a testimonial to the benefits of THC than legal allegations, Plaintiff ignores the harms that an unregulated psychoactive substance can cause to society, including the accessibility to minors and those unaware of the effects of reverse-engineered, synthetic marijuana.

## VI. **CONCLUSION**

Accordingly, Defendants respectfully request This Honorable Court grant their Motion for Judgment on the Pleadings, pursuant to Fed. R. Civ. P. 12(c), and find in favor of Defendants on all Counts, *with prejudice*.

|  |  | Respectfully submitted, |
|---|---|---|
|  |  | **MacMAIN LEINHAUSER PC** |
| Dated: December 22, 2023 | By: | */s/ David J. MacMain* |
|  |  | David J. MacMain |
|  |  | Jamison C. MacMain |
|  |  | Attorney I.D. Nos. 59320 / 334149 |
|  |  | 433 W. Market Street, Suite 200 |
|  |  | West Chester, PA 19382 |
|  |  | *Attorneys for Defendants, Lancaster County, Lancaster County District Attorney Heather Adams, and Detective (Retired) Jeffrey Krause* |

## CERTIFICATE OF SERVICE

I, David J. MacMain, Esquire, hereby certify that on this 22nd day of December 2023, a copy of the foregoing *Defendants, Lancaster County, Lancaster County District Attorney Heather Adams, and Detective (Retired) Jeffrey Krause's Motion for Judgment on the Pleadings* and *Brief in Support* were served upon the following via ECF Notification:

Jerad Najvar
Najvar Law Firm PLLC
2180 North Loop West, Suite 255
Houston, TX 77018
*Attorney for Plaintiff*

Tina O. Miller
Comber Miller LLC
7th Avenue, Suite 300
Pittsburgh, PA 15219
*Attorney for Plaintiff*

**MacMAIN LEINHAUSER PC**

By:   */s/ David J. MacMain*
      David J. MacMain
      Jamison C. MacMain
      Attorney I.D. Nos. 59320 / 334149
      433 W. Market Street, Suite 200
      West Chester, PA 19382
      *Attorneys for Defendants, Lancaster County, Lancaster County District Attorney Heather Adams, and Lieutenant Jeffrey Krause (Retired)*