**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SMOOTH VAPE, LLC,** *Plaintiff,* | : | **CIVIL ACTION** |
| **v.** | : | |
| **LANCASTER COUNTY PENNSYLVANIA, *et al.*,** *Defendants.* | : | **NO. 5:23-CV-3000** |

**MEMORANDUM**

**KENNEY, J.** **MARCH 5, 2024**

Plaintiff Smooth Vape, LLC ("Smooth Vape") brings this suit against Defendants Lancaster County, Pennsylvania; Lancaster County District Attorney Heather L. Adams; Officer Jeffrey R. Krause; and John Does 1-3 ("Defendants") for damages and declaratory relief. Smooth Vape alleges that Defendants conducted a warrantless search and seizure of certain hemp-derived products sold by Smooth Vape, in violation of the Fourth Amendment of the U.S. Constitution.

Presently before the Court is Defendants' Motion for Judgment on the Pleadings with respect to all of Smooth Vape's counts: Count I (Illegal Search and Seizure) against Defendants Adams, Krause, and John Does 1-3; Count II (*Monell* Claim) against Defendant Lancaster County only; and Count III (Declaratory Judgment).[1] For the reasons provided below, the Court will grant in part and deny in part Defendant's Motion for Judgment on the Pleadings, as follows:

- Defendants Adams, Krause, and John Does 1-3's Motion for Judgment of Pleadings is

[1] The Court will not address Smooth Vape's claim for declaratory judgment because the issue of whether Smooth Vape's items were legal or illegal under Pennsylvania and/or federal law at the time of search and seizure is not relevant at this stage of proceedings. That is, even if Smooth Vape's items were illegal, a factual dispute exists between the parties as to whether Defendants' search and seizure of the items was constitutional. Similarly, the affirmative defenses of absolute and qualified immunity do not depend on a finding that the items searched and seized were legal or illegal. Even if the items were illegal, a factual dispute exists between the parties as to whether Defendants Adams and Krause are protected for their actions in searching and seizing the items.

**DENIED** as to Count I (Illegal Search and Seizure).

- Defendant Lancaster County's Motion for Judgment on the Pleadings as to Count II (*Monell* Claim) is **GRANTED** and Count II is dismissed. Accordingly, Lancaster County is dismissed from this action.

## I. BACKGROUND[2] AND PROCEDURAL HISTORY

### A. Smooth Vape

Smooth Vape sells primarily vapor products, such as electronic devices for delivery of vaporized nicotine and bottles of "e-liquid." ECF No. 1 ¶ 15. John Dolan ("Dolan"), owner of Smooth Vape, opened his first store in 2015 in Cleona, Pennsylvania. *Id*. ¶¶ 8, 15. Smooth Vape now operates four retail locations in central Pennsylvania, with approximately 25 full-time and part-time employees. *Id*. ¶¶ 8, 16.

In addition to electronic nicotine products, Smooth Vape sells products containing various chemical products derived from hemp, namely products containing Delta-8 tetrahydrocannabinol ("Delta-8 THC"), Delta-9 THC, Delta-10 THC, and Delta-11 THC. *Id*. ¶ 17. Delta-9 THC is the main psychoactive ingredient in marijuana. *Id*. ¶ 19. Under 3 Pa. C.S.A. § 702, Delta-9 THC products may not contain more than 0.3% Delta-9 THC concentration. *Id*. All hemp-derived products sold by Smooth Vape contain less than 0.3% Delta-9 THC. *Id.* ¶ 21. These products are "extremely popular" and generate "tens of thousands of dollars" in monthly revenues for each of Smooth Vape's retail locations. *Id.* ¶ 23.

### B. Defendants' Raid of Smooth Vape on April 18, 2023

On the morning of Thursday, April 18, 2023, Defendant Jeffrey Krause ("Krause"), a

---

2 Pursuant to the relevant legal standard for evaluating a Motion for Judgment on the Pleadings, the Court must accept as true all facts pled in plaintiff's complaint; accordingly, the facts herein are stated as they are pled in Smooth Vape's complaint. ECF No. 1; *see Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018).

lieutenant with the Lancaster County Drug Task Force (LCDTF), entered Smooth Vape's store at 2600 Willow Street Pike, Willow Street, Pennsylvania, during regular business hours. *Id.* ¶¶ 11, 27, 28. He was accompanied by three officers with the LCDTF (John Does 1-3). *Id.* ¶ 27. Defendant Krause and the officers were "armed and in full uniform, including bulletproof vests bearing the LCDTF initials." *Id.*

When Defendants entered the store, Smooth Vape employee Gavyn Barto ("Barto") was the only employee on duty. *Id.* ¶ 28. Defendant Krause approached the counter and showed Barto "a piece of paper." *Id.* He informed Barto that the officers were in the store "on behalf of the District Attorney to seize all Delta-8 and Delta-9 products because they were now illegal." *Id.* Defendant Krause told Barto that if he objected to the search or seizure, the officers would "shut down the store." *Id.* ¶ 29.

The paper that Defendant Krause placed on the counter was a memo from Defendant Heather L. Adams ("Adams"), the District Attorney of Lancaster County, addressed generally to "Store Owner/Store Manager," and dated April 17, 2023. *Id.* ¶ 30; *see also* ECF No. 1-1. The purpose of the memo was to inform store owners that under "Act 64 of Pennsylvania Law, otherwise known as the Controlled Substance, Drug, Device and Cosmetic Act, THC isomers including Delta-8 THC and Delta-10 THC, as well as any product with a Delta-9 THC concentration greater than 0.3%, are schedule I controlled substances." *Id.* The memo directed LCDTF detectives to seize "all products in plain view labeled or advertised as containing Delta-8 THC or Delta-10 THC." *Id.* The memo further stated that "[n]o charges would be filed if the Store Owner/Store Manager cooperated fully with the LCDTF," and defined "cooperation" as "immediate surrender to law enforcement or any such illegal products . . . and ceasing any future sale of such products." *Id.*

In response to Defendant Adams's directive in the memo, Barto informed Defendants that he had to phone Kaylee Stoneburner ("Stoneburner"), Smooth Vape's assistant manager. *Id*. ¶ 31. Barto then called Smooth Vape's owner, Dolan. *Id.* ¶ 32. Dolan spoke with Defendant Krause on the phone and "stated his understanding that any Delta product with less than 0.3% Delta-9 THC concentration was legal." *Id*. Defendant Krause replied that he and the officers were in the store on the orders of the District Attorney, i.e., Defendant Adams, to take all Delta-8 THC, Delta-10 THC, or Delta-11 THC products. *Id.* Defendant Krause informed Dolan that the officers would either take the THC products or shut down the store. *Id*. ¶ 33. Dolan declined to interfere with the officers' plans because he "knew" that if they closed the store, he could no longer sell any of his inventory, such as non-hemp items like "vapor products and body jewelry." *Id.* ¶ 38.

Assistant Manager Stoneburner arrived at the store "within minutes" and asked the officers "what was going on." *Id.* ¶ 34. Defendant Krause showed her Defendant Adams's memo and reiterated that the officers would either seize the THC products or shut down the store. *Id.* Stoneburner asked "why Plaintiff Smooth Vape could no longer sell Delta-8 THC, Delta-10 THC, and Delta-11 THC products," which she understood to be legal. *Id.* ¶ 35. Defendant Krause referred Stoneburner to Defendant Adams's memo. *Id.* ¶ 36.

Defendants Krause and John Does 1-3 then "retrieved boxes from their vans, brought them into the store, and set them in front of the shelves." *Id.* ¶ 39. The officers spent "about 45 minutes to an hour in the store, carefully reading the labels, including ingredients lists, on the packages." *Id.* The officers placed any product containing Delta-8 THC, Delta-10 THC, or Delta-11 THC into a box. *Id.* Smooth Vape alleges that the officers seized merchandise totaling tens of thousands of dollars. *Id.* ¶ 40.

Defendant Krause did not ask Dolan, Barto, or Stoneburner for consent to search the store or seize any products. *Id.* ¶ 37. Stoneburner alleges, however, that at some point during the raid, the officers gave her a form to sign. *Id.* ¶ 41. The Complaint does not specify the form, nor is the form attached to Smooth Vape's original pleadings, but Plaintiff is likely referring to a Consent to Search form. ECF No. 19-1 at 3; *see also* ECF No. 11-5. On the form is Stoneburner's signature, attesting that she "freely and voluntarily give[s] [her] consent" to LCDTF detectives searching the store for evidence of Delta-8, Delta-9, and Delta-10 products, and that she understands that the "detective has no search warrant authorizing this search." ECF No. 11-5. The form states that Stoneburner has "the constitutional right to refuse permission for this search to be conducted" and that her "written permission for this search and seiz[ure] (if applicable) is given . . . voluntarily and without any threats or promises of any kind." *Id.*

Defendant Krause and two of the officers also prepared and signed a "Receipt/Inventory of Seized Property" form. ECF No. 1-2. The form states that "[t]he following property was taken/seized and a copy of this Receipt/Inventory with a copy of the Search Warrant and affidavit(s) … was… personally served on (name of person)," and Stoneburner's name is handwritten in the blank space. *Id.* No warrant was presented before the search or seizure or at any time thereafter. ECF No. 1 ¶ 43.

Smooth Vape alleges that their business continues to lose profits because they can no longer sell any Delta-8 THC, Delta-10 THC, or Delta-11 THC products at the Willow Street store location. *Id.* ¶ 46. These products "previously accounted for sales of $15,000 each month" at this location. *Id.* Smooth Vape continues to sell these products at their stores in Dauphin and Lebanon counties, without incident. *Id.* ¶ 47.

**C. Procedural History**

Plaintiff Smooth Vape filed their Complaint on August 4, 2023, bringing the following claims against Defendants: Count I – Illegal Search and Seizure in Violation of the Fourth Amendment, under 42 U.S.C. § 1983; Count II – *Monell* Claim Against Defendant Lancaster County, under 42 U.S.C. § 1983; and Count III – Declaratory Judgment. ECF No. 1. Defendants filed their Answer on October 11, 2023. ECF No. 11. Two months later, on December 22, 2023, Defendants filed their instant Motion for Judgment on the Pleadings, seeking dismissal of all counts of Smooth Vape's Complaint. ECF No. 19.

## II. LEGAL STANDARD

Fed. R. Civ. P. 12(c) allows a party to move for judgment on the pleadings after the pleadings close, but within such time as to not delay trial. A motion for judgment on the pleadings is evaluated under the same standard as a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *Zimmerman v. Corbett*, 873 F.3d 414, 417 (3d Cir. 2017); *see also Havassy v. Mercedes-Benz Fin. Servs. USA, LLC*, 432 F. Supp. 3d 543, 545 (E.D. Pa. 2020). "The only notable difference between these two standards is that the court, for a motion on the pleadings, reviews not only the complaint but also the answer and written instruments attached to the pleadings." *Harris v. City of Phila.*, 171 F. Supp. 3d 395, 398 (E.D. Pa. 2016) (citations omitted).

Accordingly, the Court must "accept as true all allegations in plaintiff's complaint as well as all reasonable inferences that can be drawn from them, and construe[] them in a light most favorable to the non-movant." *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018) (citation omitted). A motion to dismiss will be granted if the plaintiff has not articulated enough factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The plaintiff must plead "sufficient factual matter, accepted

as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. It is not enough for a plaintiff to allege mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

## III. DISCUSSION

Defendants seek judgment in their favor on the grounds that no violation of Smooth Vape's constitutional rights occurred on April 18, 2023, because "Detective Krause entered Plaintiff's business while it was open to the public, and the [Delta 8, Delta 9, and Delta 10 THC] items were in plain view [and] seized with the consent of Plaintiff's manager[.]" ECF No. 19-1 at 9. For the reasons discussed below, the Court denies judgment on the pleadings with respect to Count 1 (illegal search and seizure) against Defendants Krause, Adams, and John Does 1-3. The Court finds that absolute immunity as an affirmative defense is not established based on the facts alleged in the pleadings thus far. With respect to qualified immunity, the Court finds that it is premature to determine if this affirmative defense applies to Defendants Krause and/or Defendant Adams. Finally, the Court does not find merit to Smooth Vape's *Monell* claim (Count II) and enters judgment in favor of Defendant Lancaster County.

### A. Count I: Smooth Vape Has Pled Sufficient Facts to State a Plausible Claim That Defendants Conducted an Unconstitutional Search and Seizure Because Defendants Lacked a Warrant and 1) Smooth Vape Did Not Consent to the Search and Seizure and 2) the Plain View Doctrine Exception Did Not Apply

Defendants aver that Defendant Krause and John Does 1-3 effectuated a legal search and seizure of Smooth Vape's products under the Fourth Amendment. *Id.* at 5. The Fourth Amendment provides as follows:

> The right of the people to be secure in their persons, houses, papers, and effects, against

> unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. Smooth Vape alleges, and Defendants do not dispute, that Defendants lacked a warrant, as required by the Fourth Amendment, to search and seize Smooth Vape's products. ECF No. 1 ¶ 43; *see also Marshall v. Barlow's Inc.*, 436 U.S. 307, 311 (1978) ("The Warrant Clause of the Fourth Amendment protects commercial buildings as well as private homes."). Instead of a warrant, Defendant Krause presented Smooth Vape a memo, generically addressed to "Store Owner/Store Manager" on Office of The District Attorney of Lancaster County letterhead. ECF No. 1 ¶ 30; *see also* ECF No. 1-1. In the memo, Defendant Adams, the District Attorney of Lancaster County, directed detectives to seize all Delta-8 or Delta-10 THC products in plain view. *Id.* To be clear, this memo was not a court-issued warrant.

The Fourth Amendment's proscription against warrantless searches and seizures are "subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967). Defendants misguidedly rely on two such exceptions to justify their warrantless search and seizure of Smooth Vape products: 1) consent to search and 2) the "plain view" doctrine. ECF No. 19-1. We will address each argument in turn.

**1. Consent Exception to the Fourth Amendment's Warrant Requirement**

Defendant avers that "a law enforcement officer can search and seize products from a business with the consent of an owner or store manager, regardless of whether a warrant is acquired or presented." *Id.* at 8. Indeed, Defendant is correct that "[i]t is [] well settled that one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent." *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973) (citations omitted). However, in *Schneckloth*, the Supreme Court qualified the conditions

governing consent:

> [W]hen the subject of a search is not in custody and the State attempts to justify a search on the basis of his consent, the Fourth and Fourteenth Amendments require that [the State] demonstrate that the consent was in fact voluntarily given, and not the result of duress or coercion, express or implied. Voluntariness is a question of fact to be determined by all the circumstances . . . .

*Id.* at 248-49.

To justify a search based on consent, the government "has the burden of proving that the consent was, in fact, freely and voluntarily given." *United States v. Price*, 558 F.3d 270, 277 (3d Cir. 2009) (quoting *Bumper v. North Carolina*, 391 U.S. 543, 548 (1968)). This burden "is not satisfied by showing a mere submission to a claim of lawful authority." *Id.* at 278 (quoting *Florida v. Royer*, 460 U.S. 491, 497 (1983)). Rather, an important consideration underlying *Schneckloth* is "the difficulty of the prosecution's burden if it had to prove the nature of a person's subjective understanding." *United States v. Molt*, 589 F.2d 1247, 1251 (3d Cir. 1978) (quoting *Schneckloth*, 412 U.S. 218 at 230). If evidence exists that shows a person believed he must consent and "that belief stems directly from misrepresentations by government agents, however innocently made," consent is even more questionable. *Id.* at 1251-52. Likewise, "[o]rderly submission to law-enforcement officers who, in effect, represented to the defendant that they had the authority to enter and search the house, against his will if necessary, [is] not such consent [] constitut[ing] an . . . intentional and voluntary waiver by the defendant of his fundamental rights under the Fourth Amendment . . . ." *Bumper,* 391 U.S. at 549 n.14 (citation omitted).

Defendants assert Defendants Krause and John Does 1-3 seized the Delta THC products with the consent of Stoneburner, Smooth Vape's assistant manager. Defendants further contend that even if Smooth Vape's owner and employees feared the store would be shut down if they did not consent, "reluctance to consent is not enough to negate consent." ECF No. 19-1 at 9. But

Smooth Vape's state of reluctance is not at issue here. Rather, the simple inquiry is whether Smooth Vape provided free and voluntary consent, and not as the result of duress or coercion, express or implied, such that Defendants may claim an exception to the Fourth Amendment's search warrant requirement.

A preliminary review of the facts supports Smooth Vape's claim that consent was not freely and voluntarily given. On the morning of April 18, 2023, Defendant Krause and John Does 1-3 entered Smooth Vape under color of the memo from Defendant Adams, District Attorney of Lancaster County, which directed the officers to seize all products in plain view that contained Delta-8 THC or Delta-10 THC. ECF No. 1-1. Defendant Adams's memo warned that if Smooth Vape's Owner or Manager did not cooperate fully with the Lancaster County Drug Task Force, charges could be filed. *Id.* "Cooperation" included the "immediate surrender to law enforcement of . . . illegal products from the establishment, on or off site, and ceasing of any future sales of such products." *Id.*

Smooth Vape contends that Defendant Krause did not ask Smooth Vape owner Dolan, employee Barto, or Assistant Manager Stoneburner for consent to search the store or seize any products. ECF No. 1 ¶ 37. Instead, Defendant Krause and the officers provided Smooth Vape with an ultimatum – the officers would either seize the products or shut down the store, preventing Smooth Vape from selling any merchandise, including non-hemp products. *Id.*; *see also* ECF No. 24 at 12. Smooth Vape believed that if they interfered with the officers' plans, the officers would close the entire store. There was no choice but to permit the officers to proceed with their plans. ECF No. 1 ¶ 38. Smooth Vape also alleges that Defendants forced Stoneburner to sign the Consent to Search form and that she felt that she had no choice but to sign. *Id.* ¶ 41. Smooth Vape avers that if the officers had not threatened to shut down the store, Stoneburner would not have signed

the form. *Id.*

Smooth Vape's allegations raise a judiciable dispute of fact as to whether consent was freely and voluntarily given, and not as the result of duress or coercion, express or implied, such that Defendant may claim an exception to the Fourth Amendment's search warrant requirement. The Court finds that Smooth Vape has pled sufficient facts to state a plausible claim that because consent was not voluntarily and freely given, Defendants engaged in an unconstitutional search and seizure of Smooth Vape and their merchandise.

**2. Plain View Doctrine as an Exception to the Fourth Amendment's Warrant Requirement**

Defendants next rely on the "plain view" doctrine, one of the few exceptions to the general rule that seizure of evidence is presumptively unreasonable under the Fourth Amendment, to justify seizing Smooth Vape's merchandise without a proper search warrant. ECF No. 19-1 at 7; *see also Horton v. California*, 496 U.S. 128, 133 (1990).[3] Defendants assert that because Smooth Vape's allegedly illegal products were in plain view on the store's shelves, Defendants lawfully seized the items. *Id.* at 8.

In *Horton*, the Supreme Court clarified the two conditions that must be satisfied to justify a warrantless seizure of evidence. *Horton*, 496 U.S. 128 at 136. First, the item must be in plain view and its incriminating character "immediately apparent." *Id*. However, discovery of the item does not have to be inadvertent. *Id.* at 130. Second, the officer must be lawfully located in the place from which the object can be plainly seen, and the officer must also have a lawful right of

[3] In *Horton*, police obtained a valid search warrant, searched petitioner's home, and seized items (guns and weapons) in plain view but not described in the search warrant. *Horton*, 496 U.S. 128 at 142. The Court held that the seizure of the guns and weapons was permissible because they had been discovered in "plain view" during an otherwise legal search conducted under a warrant. *Id.* The police also had probable cause to believe the weapons had been used in the crime under investigation. *Id*.

access to the object itself. *Id.* at 137. Thus, if officers have a valid search warrant and discover in plain view a contraband item not described with particularity in the search warrant, the item may be seized under the plain view doctrine. Alternatively, if officers lack a valid search warrant but are otherwise permitted to conduct a search under a recognized exception to the warrant requirement, e.g., consent, the plain view doctrine can apply. *Id.* at 135.

Here, Defendants rely on *Horton* to assert that the plain view doctrine permitted seizure of Smooth Vape's merchandise because the items were in plain view. Yet this adoption of the plain view doctrine to fit the instant facts is plainly problematic. First, under *Horton*, the item must be in plain view and its incriminating character "immediately apparent." *Id.* at 136. Smooth Vape recounts how Defendant Krause and the officers spent "about 45 minutes to an hour in the store carefully reading the labels, including the ingredients lists, on the packages. If this deliberative review of the product reflected that a product contained any Delta-8 THC, Delta-10 THC, or Delta-11 HC, the officers placed it into one of their boxes." ECF No. 1 ¶ 39. Defendants do not contest, and in fact affirmatively cite, this description of their meticulous and protracted surveying of Smooth Vape's products "deemed to be illegal." ECF No. 19-1 at 3. The facts pled here sufficiently call into question the extent to which the incriminating nature of the seized items was immediately apparent.

Second, the plain view doctrine requires that an officer be lawfully located in the place from which the object can be plainly seen, and the officer must also have a lawful right of access to the object itself. As discussed *supra*, Defendants appear to have lacked a valid warrant to search Smooth Vape and access Smooth Vape's products in the first place. ECF No. 1 ¶ 43. Further, as also discussed *supra*, because Smooth Vape avers that they did not consent to the search, Defendant cannot at this stage rely on consent as an exception to the Fourth Amendment's search

warrant requirement. Moreover, the memo from Defendant Adams, District Attorney of Lancaster County, is not a valid substitute for a court-issued search warrant that describes, with particularity, the place to be searched, i.e., Smooth Vape, and the things to be seized.

In sum, the Court finds that Smooth Vape has pled sufficient facts to state a plausible claim that Defendants' seizure of Smooth Vape's merchandise is not permissible under the plain view exception to the Fourth Amendment's warrant requirement. The Fourth Amendment offers express protection against unreasonable search and seizures by requiring a warrant, issued upon probable cause that criminal activity is afoot, and "particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. The facts pled by Smooth Vape support their claim that the incriminating character of the items seized was not immediately apparent and that Defendants lacked a warrant or other lawful right to access Smooth Vape's merchandise.

**B. Count I Affirmative Defenses: Smooth Vape Has Pled Sufficient Facts to State a Plausible Claim that Defendants Adams and Krause Are Not Protected by 1) Absolute Immunity or 2) Qualified Immunity.**

Defendants next assert that even if Defendants' conduct violated the Fourth Amendment, Defendants Adams and Krause are protected by absolute or qualified immunity. These affirmative defenses will be discussed in turn.

**1. Absolute Immunity**

Defendants assert that Defendant District Attorney Adams must be afforded absolute immunity because her duties as chief prosecutor insulates her from liability. ECF No. 19-1 at 9-10. The seminal case on prosecutorial immunity is *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976), in which the Supreme Court held that prosecutors are absolutely immune from civil liability for activities "intimately associated with the judicial phase of the criminal process." That is, "in initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil

suit for damages under [42 U.S.C.A §] 1983." *Id.* at 431. "[T]he appropriate inquiry in determining whether immunity is available involves the role in which the prosecutor is acting – an advocacy role, or an investigative role." *Rose v. Bartle*, 871 F.2d 331, 344 (3d Cir. 1989).

Actions related to a "prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not protected by absolute immunity." *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993). "There is a difference between the advocate's role in evaluating evidence and interviewing witnesses as he prepares for trial, on the one hand, and the detective's role in searching for the clues and collaboration that might give him probable cause to recommend that a suspect be arrested, on the other hand." *Id.* Thus, "if a prosecutor plans and executes a raid on a suspected weapons cache, he has no greater claim to complete immunity than activities of police officers allegedly acting under his direction." *Id.* at 274 (citation omitted).

The issue here, then, is whether Defendant Adams, in directing the search and seizure of Smooth Vape's items, was acting as an advocate or an investigator. For example, was Defendant Adams' purpose to initiate prosecution against Smooth Vape, or, on the other hand, was her purpose to investigate potential criminal activity at Smooth Vape and seize any allegedly illegal items in plain view? As pled here, the facts support the latter, i.e., that Defendant Adams was acting in an investigative role upon releasing her memo and directing the raid against Smooth Vape. Accordingly, the Court finds that Defendant Adams' alleged immunity is not established based on the facts alleged in the pleadings so far. The door is open to this defense as the parties conduct discovery.

**2. Qualified Immunity**

Defendants also assert that if absolute immunity does not apply to Defendant Adams, then

she should still be entitled to qualified immunity. ECF No. 19-1 at 10. However, Defendants do not brief the Court on this assertion, other than to cite a Third Circuit case with no additional analysis. Defendants instead focus their discussion of qualified immunity on Defendant Krause. The Court's discussion here will do the same, but our intent is not to preclude the possibility that Defendant Adams may also be entitled to qualified immunity, if Defendants choose to develop that defense as the case proceeds.

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  A "clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). Qualified immunity "balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties unreasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

In determining if qualified immunity applies to an official's conduct, the court may apply a two-prong inquiry: 1) do the facts alleged by plaintiff show a violation of a constitutional right and 2) if the plaintiff has satisfied the first step, was the right at issue clearly established at the time of the defendant's alleged misconduct? *Saucier v. Katz*, 533 U.S. 194, 199 (2001). The "contours of the right must be sufficiently clear that a reasonable official would understand that what they are doing violates that right." *Saucier*, 533 U.S. 194 at 202. The *Saucier* analysis is not mandatory; courts may exercise their "sound discretion" in deciding which, if any, of the two prongs of the qualified immunity analysis should be addressed first "in light of the circumstances

in the particular case at hand." *Pearson,* 555 U.S. at 236 (2009) (receding from the mandated two-step protocol set forth in *Saucier*).

Here, the Court will address both prongs as a preliminary matter and without a final determination as to whether qualified immunity applies to Defendant Krause. First, the specific facts alleged support Smooth Vape's claim that Defendant Krause's actions violated a clearly established statutory or constitutional right of which a reasonable person would have known. Smooth Vape alleges, and Defendants do not dispute, that Defendant Krause and the officers lacked a warrant, as required by the Fourth Amendment, to search and seize Smooth Vape's products. ECF No. 1 ¶ 43.  Instead of a warrant, Defendant Krause presented Smooth Vape a memo, generically addressed to "Store Owner/Store Manager," in which Defendant Adams, the District Attorney of Lancaster County, directed detectives to seize all Delta-8 or Delta-10 THC products in plain view. *Id.* ¶¶ 28, 30; *see also* ECF No. 1-1. But the memo was not a substitute for a warrant, and Defendants do not even claim that memo had the same legal effect as a warrant.

Recognizing that they lacked a warrant, Defendants errantly rely on two recognized exceptions to the search warrant requirement – the consent exception and *Horton*'s plain view doctrine – for conducting their warrantless search and seizure of Smooth Vape. As discussed *supra*, however, Defendants' reliance on these exceptions under the factual circumstances of this case is problematic, as follows: Smooth Vape avers that 1) consent to search was given, if at all, under threat of having their store immediately shut down and 2) the items seized were not in fact in plain view and Defendants lacked valid consent to search Smooth Vape in the first place.

The Court thus finds that, with respect to prong 1, Smooth Vape has pled facts to support their claim that, in view of the events on April 18, 2023, Defendants violated a constitutional right – the Fourth Amendment's warrant requirement – that was clearly established at the time of

Defendants' raid.

The second prong of the analysis asks if the right at issue was clearly established at the time of a defendant's alleged misconduct. Defendants aver that "any reasonable officer" would "reasonably believe" that they had probable cause to search and seize Smooth Vape's Delta THC products and that Defendants would have been derelict in their duties had they not complied with Defendant Adams's orders. ECF No. 19-1 at 11. Defendants further assert that Defendant Krause is entitled to qualified immunity because "it was not clearly established that Detective Krause was not authorized to follow the directions of District Attorney Adams by seizing Plaintiff's products." *Id.* Smooth Vape responds, however, that under the factual circumstances of April 18, 2023, "no reasonable officer" such as Defendant Krause "[could] rely on coercion or misrepresentation of legal authority to avoid the warrant requirement" or negate any claimed consent. ECF No. 24 at 17. The Court finds that Defendants have not adequately set forth facts and relevant case law to counter Smooth Vape's framing of the constitutionality of Defendants' conduct on April 18, 2023. That is, Defendant has not shown that the right at issue – the Fourth Amendment's warrant requirement – was not, in fact, clearly established at the time of the raid, such that qualified immunity could apply to Defendants.

In sum, the Court finds that Defendants have failed to effectively formulate their claim to qualified immunity as an affirmative defense. Accordingly, the Court reserves judgment on whether qualified immunity applies to Defendants Krause, and possibly Adams, until after discovery and upon dispositive motion.

### C. Count II: Smooth Vape Has Not Pled Sufficient Facts to State a Plausible Claim That Defendant Lancaster County Is Liable for the Unconstitutional Search and Seizure of Smooth Vape and Smooth Vape's Merchandise.

Smooth Vape also asserts a *Monell* claim against Defendant Lancaster County for

Defendant Adams's decision as chief prosecutor to order the unconstitutional search and seizure of Smooth Vape's allegedly illegal items. ECF No. ¶¶ 76-78. In *Monell v. Dep't of Soc. Servs. of N.Y.C.*, 436 U.S. 658, 690 (1978), the Supreme Court held that a local government is a "person" that can be sued under 42 U.S.C. § 1983. However, to hold a municipality liable under *Monell*, a plaintiff must allege that "a [local] government's policy or custom … inflict[ed] the injury" in question. *Id.* at 694.  The Third Circuit has explained that "[p]olicy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict." *Estate of Roman v. City of Newark*, 914 F.3d 789, 789 (3d Cir. 2019) (citation omitted).

With respect to whether a District Attorney is a policymaker for *Monell* purposes, the Third Circuit has explained that District Attorneys are "local policy makers when they manage or administer their own offices" and that they are "[s]tate officials when they prosecute crimes or otherwise carry out policies established by the State." *Carter v. City of Phila.*, 181 F.3d 339, 352 (3d Cir. 1999).  It is "only when making administrative decisions that a prosecutor is acting as a county official. Thus, a municipality can only be held liable for the acts of its officials undertaken in an administrative capacity." *Whitfield v. City of Phila.*, 587 F. Supp. 2d. 657, 671 (E.D. Pa. 2008). Administrative duties may include "workplace hiring, payroll administration, [or] the maintenance of physical facilities, and the like." *Van de Kamp v. Goldstein*, 555 U.S. 335, 344 (2009).

The question here, then, is whether Defendant Adams was a policymaker for Lancaster County such that the county is liable for Defendant Adams's conduct in directing the Lancaster County Drug Task Force to search and seize Smooth Vape and their merchandise. The answer is no. Smooth Vape has not pled facts or cited case law to support a claim that Defendant Adams

was acting as a local policymaker because her memo represented an administrative function of her office. Rather, in view of the pleadings and exhibits attached to the pleadings, it appears that District Adams released her memo, written on Office of The District Attorney of Lancaster County letterhead, in her capacity as a state official of the Commonwealth of Pennsylvania.[4] Thus, judgment is entered in favor of Defendant Lancaster County on Count II and Lancaster County is dismissed from this action.

## IV. CONCLUSION

For the reasons stated, the Court denies Defendants' Motion for Judgment on the Pleadings with respect to Count I (Illegal Search and Seizure) against Defendants Adams, Krause, and John Does 1-3. In addition, the Court finds that absolute immunity remains an issue because Defendant Adams's absolute immunity is not established based on the facts alleged in the pleadings so far. This defense remains available for further development as the case proceeds. With respect to qualified immunity, the Court reserves judgment on whether this affirmative defense applies to Defendants Krause, and possibly Adams, until after discovery and upon dispositive motion.

Finally, the Court grants Defendants' Motion for Judgment on the Pleadings with respect to Count II (*Monell* Claim) and Count II is dismissed. Accordingly, Defendant Lancaster County is dismissed from this action. An appropriate Order will follow.

**BY THE COURT:**

**/s/ Chad F. Kenney**

**CHAD F. KENNEY, JUDGE**

4 The court's conclusion with respect to Smooth Vape's *Monell* claim does not mean, however, that Defendant Adams's memo was thus prosecutorial in nature; that is a question relevant to Defendant Adams's claim of absolute immunity and will not be resolved at this stage of the proceedings.